IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

Jacksonville Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cr-75-J-39PDB |
| | ) | |
| DAVID M. PON, | ) | |
| | ) | |
| Defendant. | ) | |

**SPECIAL MASTER'S REPORT REGARDING PRETRIAL RELEASE**

The Special Master respectfully submits this Report in response to the Court's Order Appointing Special Master dated July 7, 2014 (Docket No. 63).

On April 24, 2014, the grand jury returned an indictment charging defendant David M. Pon with 20 counts of health care fraud in violation of 18 U.S.C. § 1347. On May 13, 2014, after a hearing relating to defendant's pretrial detention, Magistrate Judge Barksdale issued a Detention Order Pending Trial, finding by a preponderance of the evidence that defendant "presents a serious flight risk and that no condition or combination of conditions will reasonably assure his presence as required." (Docket No. 24.1, at 5).

On July 7, 2014, the Court appointed John L. Brownlee, Esq. and the law firm Holland & Knight LLP as Special Master for the purpose of reviewing defendant's financial resources and determining whether they can be sufficiently encumbered in such a way that defendant could not use them to fund flight pretrial. Specifically, the Court ordered the Special Master to address:

(1) the nature and value of defendant's assets and the authenticity of the stock certificates purportedly issued in his name;

(2) whether it is possible sufficiently to encumber defendant's assets such that defendant would be reasonably impeded in his ability to fund flight, and the best methods for doing so;

(3) whether the Special Master is able to review and approve defendant's requests to use his assets and/or any income generated by his medical practice for expenses, including legal fees and personal or business expenses, or whether it may be more prudent to require defendant to hire an accountant to do so; and

(4) any other suggestions the Special Master may have to provide the Court with reasonable assurance that defendant will appear for trial.

The Special Master requested that the parties provide all materials related to defendant's assets and financial means, as well as any other documents or materials they wished to be considered during the preparation of this Report. The Special Master held a conference with the parties on July 16, 2014 to discuss the issues referenced above. The government and defendant provided written submissions and supporting documents and responded to several rounds of questions. In addition, the Special Master met with Federal Bureau of Investigation ("FBI") personnel who conducted an analysis of defendant's assets as part of the government's investigation and interviewed Peter Ow, a friend of defendant's who facilitated his investments in two companies that do business in China. This Report summarizes the Special Master's findings.

## I. <u>GOVERNING LEGAL STANDARD AND SCOPE OF THIS REPORT</u>

Pretrial detention is governed by the Bail Reform Act, 18 U.S.C. § 3142. While a general presumption favors releasing defendants on bond pending trial, a defendant may nevertheless be detained when a court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required" at future proceedings. 18 U.S.C. § 3142(e)(1); *see United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). In deciding whether a defendant presents a risk of flight, the Court must consider the following: (1) the nature and circumstances of the offense; (2) the weight of the evidence against defendant; (3) the history and

characteristics of defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

This Report does not revisit the findings of Judge Barksdale or address each of the factors under the Bail Reform Act. Instead, it addresses only the specific inquiries of the Court, and in particular the nature and value of defendant's assets and issues regarding their encumbrance. As explained below, defendant holds assets both domestically and abroad. It is the conclusion of the Special Master that defendant's Florida real estate assets as well his $10.715 million in foreign investments can be encumbered sufficiently to reasonably impede defendant's ability to finance flight during the pendency of these proceedings.

## II. DEFENDANT'S ASSETS AND ISSUES REGARDING ENCUMBRANCE

Defendant holds ownership or equitable interests in major assets with an approximate total value of $18 to $20 million.[1] These assets fall into four general categories: (1) Florida real estate, (2) a Shanghai condominium, (3) domestic bank and investment accounts, and (4) funds invested in two companies that do business in China.

The following discussion addresses the nature of these assets, their estimated equitable value, and issues regarding their possible encumbrance.

[1] Defendant is currently a party to a divorce proceeding with his wife, Hsiang Yin Lin, pending in the Circuit Court of the Ninth Judicial Circuit, Case No. 2011-DR-019085. However, as of the date of this Report, defendant and his wife remain legally married under Florida law, and on April 23, 2014, defendant filed a motion to abate the divorce proceedings during the pendency of this case. As such, all assets owned by defendant's wife, individually, are part of the marital estate, and are included in this discussion of defendant's assets.

## A. Florida Real Estate

Defendant holds an ownership interest in at least 14 parcels of real property in Florida. Based on a review of publicly available information and information supplied by defendant and the United States, these properties have a total estimated value of approximately $7,013,167.91.[2]

Below is an asset schedule relating to defendant's known Florida properties.

| Description / Owner | Estimated Value from Divorce Proceedings | Appraised Value Per U.S. Marshals Asset Forfeiture Unit | 2013 Tax Assessed Value | Zillow "Zestimate" | Average Estimated Value |
|---|---|---|---|---|---|
| **Address:** [redacted], Windermere, FL **Owner:** David M. Pon and Hsiang-Yin Lin | $1,456,000 | $1,360,000 | $1,515,195 | $1,841,452 | **$1,543,161.75** |
| **Address:** 6420 Lu Emma Lane Groveland, FL **Owner:** David M. Pon and Hsiang-Yin Lin | $500,000 | N/A | $521,978 | $793,038 | **$605,005.33** |
| **Address:** 800 Whisper Sound Street, Minneola, FL **Owner:** Hsiang-Yin Lin | $80,000 | N/A | $115,646 | $137,587 | **$111,077.67** |
| **Address:** 5132 Conroy Road #11 Orlando, FL **Owner:** Mistic Unity, LLC | $60,000 | $96,000 | $58,070 | $82,336 | **$74,101.5** |
| **Address:** 2517 Kilgore Street Unit 104, Orlando, FL | $60,000 | $70,000 | $30,362 | $69,815 | **$57,544.25** |

[2] Defendant's wife also disclosed in her divorce Financial Affidavit that the parties jointly own a 1/9 interest in a strip of land 25 feet wide, valued at $5,000. The Special Master has no other information regarding this property, but given its apparent nominal value, it has not been included in this figure.

| | | | | | |
|---|---|---|---|---|---|
| **Owner:**<br>Mistic Unity, LLC | | | | | |
| **Address:**<br>17837 Lake Lucy Lane Groveland, FL<br>**Owner:**<br>Mistic Unity, LLC | $180,000 | N/A | $130,271 | $160,517 | **$156,929.33** |
| **Address:**<br>2912 Valencia Way, Ft Myers, FL<br>**Owner:**<br>David M. Pon and Hsiang-Yin Lin | $700,000 | N/A | $503,339 | $1,650,000 | **$951,113** |
| **Address:**<br>7858 Turkey Lake Road, Orlando, FL<br>**Owner:**<br>Successo Development LLC | $2,500,000 | N/A | $1,810,293 | N/A | **$2,155,146.50** |
| **Address:**<br>3480 Soho Street Orlando, FL<br>**Owner:**<br>David M. Pon and Hsiang-Yin Lin | $60,000 | $88,000 | $50,090 | $128,153 | **$81,560.75** |
| **Address:**<br>808 North John Street Orlando, FL<br>**Owner:**<br>Colonial Property Investment | $200,000 | N/A | $197,244 | N/A | **$198,622** |
| **Address:**<br>201 Magellan Circle Minneola, FL<br>**Owner:**<br>Hsiang-Yin Lin | $80,000 | N/A | N/A | $132,812 | **$106,406** |
| **Address:**<br>21726 US Hwy 27 Leesburg, FL<br>**Owner:**<br>D. Pon Enterprises | $1,200,000 | N/A | $385,265 | N/A | **$792,632.50** |

| | | | | | |
|---|---|---|---|---|---|
| **Address:**<br>21822 US Hwy 27<br>Leesburg, FL<br>**Owner:**<br>D. Pon Enterprises | $200,000 | N/A | $121,095 | $218,507 | **$179,867.33** |
| **TOTAL** | | | | | **$7,013,167.91** |

These properties include defendant's homestead in Windermere, Florida as well as several other commercial and residential properties throughout the central Florida region. The properties are of mixed ownership, with four properties titled in the names of defendant and his wife jointly, two properties titled in the name of defendant's wife only, and the remaining properties titled to various corporate entities for which defendant serves as the principal officer or managing member, including Mistic Unity, LLC, Successo Development LLC, Colonial Property Investment LLC, and D. Pon Enterprises, Inc.

These properties can all be encumbered sufficiently to provide reasonable assurance that defendant will not use them to fund flight. Indeed, four properties—the Windermere Florida property; 2517 Kilgore Street, Unit 104; 3480 Soho Street; and 5132 Conroy Road, # 11—have already been encumbered by means of the *lis pendens* liens the government filed in connection with its forfeiture efforts in this matter, which effectively render the properties unmarketable.

The remaining properties can be encumbered sufficiently through the execution of an Agreement Not to Convey or Encumber, executed between defendant and the Special Master (or other party the Court deems appropriate), substantially in the form attached as **Exhibit A**. Such an agreement, recorded in the public record, would prohibit the property's sale, disposition, or encumbrance without the express consent of both contract signatories, effectively rendering the property unmarketable and unsellable. While such an agreement would not create a lien in favor

of the Special Master, it has the added benefit of avoiding documentary stamp tax liability under Florida law.

In order to encumber the entirety of all properties at issue, agreement of all deed holders is required. For properties owned jointly by defendant and his wife, agreement of both is required to encumber both of their interests. For properties owned by the various corporate entities, agreement of the officer or director with authority to bind the company is required. Defendant appears to have the power to bind each of the corporate entities at issue.

**B. Shanghai Condominium**

Defendant's wife owns a condominium in Shanghai, China, valued at $800,000. Because she purchased the property during the pendency of her marriage to defendant, it is included as a marital asset on the Family Law Financial Affidavit she submitted in connection with the divorce proceedings. Defendant's wife claims that she is the exclusive owner of the property, her brother and sister make the monthly mortgage payments, members of her family live there, and defendant would not be permitted to live there. Defendant has provided a copy of the deed, translated into English, that states she is the exclusive owner.

The Special Master is unaware of a way to encumber the condominium but, because it is titled in the defendant's wife's name, does not believe it is necessary to do so.

**C. Domestic Bank and Investment Accounts**

Defendant holds 18 domestic bank and investment accounts with a total balance of approximately $1.1 million. While the total in the chart below reflects approximately $1.2 million in total funds, defendant transferred $100,000 to counsel in late July. He also has a $500,000 line of credit on which he has reached the borrowing limit.

| **Bank Account/ Account No.** | **Account Holder** | **Most Recent Reported Balance** |
|---|---|---|
| Bank of America - 0602 | Successo Development LLC | **$1,252.40** as of June 30, 2014 |
| Bank of America - 4047 | DBA Advanced Retina Eye Institute | **$6,801.99** as of June 30, 2014 |
| Bank of America - 5713 | David M. Pon & Hsiang-Yin Lin | **$0** as of July 10, 2014 |
| Bank of America - 7784 | David M. Pon | **$3,534.85** as of June 24, 2014 |
| Bank of America - 7823 | David M. Pon | **$1,790.79** as of June 24, 2014 |
| Fidelity Individual & SEP-IRA - 5548 | David M. Pon | **$650,436.79** as of June 30, 2014 |
| Vanguard - Individual Account | David M. Pon | **$734.47** as of June 30, 2014 |
| Vanguard - Traditional IRA | David M. Pon | **$84,783.23** as of June 30, 2014 |
| Vanguard - SEP-IRA | David M. Pon | **$433,379.59** as of June 30, 2014 |
| BB&T - 0557 | D Pon Enterprises | **$1,515.02** as of March 31, 2014 |
| BB&T - 2905 | DBA Angelina Lakeside Inn | **$5,346.86** as of June 30, 2014 |
| BB&T - 9974 | DBA Angelina Lakeside Inn | **$1,995.08** as of June 30, 2014 |

| | | |
|---|---|---|
| Harbor Funds Investment Account<br>- 3208 | David M. Pon & Hsiang-Yin Lin | **$8,073.94**<br>as of June 30, 2014 |
| Janus Non-Retirement Account<br>- 5314 | David M. Pon & Hsiang-Yin Lin | **$4,414.76**<br>as of June 30, 2014 |
| Wells Fargo Advantage Funds<br>- 3140 | David M. Pon & Hsiang-Yin Lin | **$10,662.00**<br>as of June 30, 2014 |
| Merrill Edge Individual Investor Account<br>- 1G02 | Bun Pon;<br>David Pon & Wanda Pon JTWROS | **$27,729.62**<br>as of June 30, 2014 |
| Vanguard | Wanda L. Pon & David M. Pon | **$0**<br>as of December 31, 2013 |
| Black Rock<br>- 9710<br>- 9876 | David Pon | **$0**<br>as of June 30, 2014 |
| **Total** | | **$1,242,451.39** |

Some of these accounts are IRAs, or individual retirement accounts, as to which early withdrawals would require the payment of a substantial penalty. Others are SEP-IRAs, that is simplified employee pension individual retirement arrangements, designed to provide retirement benefits for defendant and his employees. These accounts are also subject to substantial early distribution penalties. Counsel has represented that defendant intends to transfer another $550,000 to his attorneys for legal fees associated with his defense. It is anticipated that he will have to pay a 10% early distribution penalty, i.e., $55,000, because the fund will come from one of the SEP-IRA accounts. The remaining $500,000, while not insignificant, is not enough to

finance flight, at least for any meaningful amount of time. Accordingly, the Special Master does not recommend taking any steps to encumber these accounts other than to require that he obtain approval from the Special Master to make a withdrawal of, or transfer, any amount in excess of $10,000 or whatever amount the Court sees fit to order.

**D. Stock in Companies Doing Business in China**

The Special Master has carefully reviewed the materials provided by both parties and has conducted its own independent review of public records pertaining to Rockwell and Fine Elite.

Over the course of five years, defendant transferred $10.715 million from a personal bank account to Peter Ow ("Ow"), a childhood friend who lives in the San Francisco area. The record reflects that Ow subsequently invested these funds, on defendant's behalf, in two British Virgin Islands ("BVI") companies that do business in China: (1) $4,315,000 in Rockwell Advanced Carbon Holdings LTD ("Rockwell"), and (2) $6,400,000 in Fine Elite Holding LTD ("Fine Elite"). Rockwell, which manufactures graphite powder for use in lithium batteries, has only six or seven shareholders. Defendant owns about 43% of Rockwell's stock, and Ow, the former chairman of the company, owns nearly 50% of its stock. Ow owns 2 to 3% of Fine Elite, which invests in and develops high-tech business parks. He is neither an officer nor a director of that company.

1. Irregularities in the Documentation

The record reflects significant irregularities in the documentation of defendant's ownership interests in Rockwell and Fine Elite. A description of some of those irregularities follows.

a. Rockwell

Even though defendant had made his $4.315 million investment in Rockwell by means of several purchases from December 2006 to November 2011, Rockwell did not issue a stock certificate until April 21, 2014.

b. Fine Elite

Defendant made his $6.4 million investment in Fine Elite by means of several purchases from November 2007 through May 2011. Defendant initially provided the Court (during the June 9, 2014 hearing) with a stock certificate, dated November 20, 2009, that reflected the issuance of 800,000 shares at $1 per share.[3] Not only did the stock certificate not match up with the $4,950,000 defendant had invested in the company by that date, but it also failed to match up with the final investment amount of $6.4 million.

In response to the Special Master's inquiry about this inconsistency, defendant, after contacting Ow for assistance, provided a July 21, 2014 letter from Jun Xu of Fine Elite (**Exhibit B**) stating that defendant's $6.4 million investment in the company was structured as follows:

- 800,000 shares at $1/share
- 500,000 shares at $2/share held by Wisenet Corp. ("Wisenet") for his benefit
- 2,050,000 shares at $1/share held by Wisenet for his benefit
- 2,550,000 "unissued" shares at $1/share

According to Ow, Wisenet is a BVI company he formed in or around 2006 for business purposes, but it has never been active. In or around 2009, he and defendant had discussions

[3] Defendant also provided the Court with the Declaration of Jun Xu, a director of Fine Elite, who stated that the company had issued defendant a stock certificate reflecting 800,000 shares. Apparently, Ow or his attorney had provided the stock certificate and the declaration to defense counsel.

about defendant owning some of his Fine Elite shares in the name of a company and offered the use of Wisenet for that purpose. In October 2009, Ow executed a Declaration of Trust providing that he held Wisenet for the benefit of defendant (**Exhibit C**). Ow never received any shares of Fine Elite in the name of Wisenet, however, and neither defendant nor Ow believed anything ever came out of those discussions. According to defendant, the first time defendant and Ow learned there were shares supposedly in the name of Wisenet was when defendant received Jun Xu's July 21, 2014 letter.

In addition, Fine Elite's Memorandum of Association, dated August 25, 2006, authorizes the company to issue 50,000 shares of stock (**Exhibit D**). On May 21, 2009, the company amended the Memorandum of Association to increase the number of authorized shares to 20 million (**Exhibit E**). By that time, however, defendant already owned 3.3 million shares of Fine Elite stock.

2. The Record Shows Defendant Invested
<u>$10.715 Million in Rockwell and Fine Elite.</u>

Notwithstanding the lax documentary controls, the use of an offshore entity to hold some of defendant's Fine Elite shares, and Ow's claimed failure to know—or at least disclose—that Wisenet held Fine Elite stock for defendant's benefit, there is strong evidence that defendant indeed invested $4.315 million in Rockwell and $6.4 million in Fine Elite. That evidence tends to support the conclusion that the stock certificates are authentic, even if the Fine Elite certificate reflecting defendant's ownership of 800,000 share does not evidence his entire investment in that company.

Bank records obtained by the government reflect the transfer of $10.715 million from defendant to Ow and the subsequent transfers of $4.315 million and $6.4 million from Ow to accounts in China associated with Rockwell and Fine Elite, respectively (**Exhibit F**, FBI

Summary of Transfers). Statements of shares signed by directors for Rockwell (Ow) and Fine Elite (Jun Xu) affirm the issuance of stock to defendant (**Exhibit G)**. Signed declarations of directors for Rockwell (Sam Yip) and Fine Elite (Xu Jun) also confirm the issuance of stock to defendant and the accuracy of the certificates (**Exhibit H**). In addition, during a June 2012 interview with the FBI, Ow confirmed defendant's investments in the two companies. (**Exhibit I**).

3. The Shares Can Be Encumbered During the Pendency of this Case.

Defendant's shares of Rockwell and Fine Elite can be encumbered sufficiently such that he will be reasonably impeded in his ability to fund flight. The Special Master recommends that prior to being released, defendant divest himself of ownership of the shares by transferring ownership of the shares to defense counsel's law firm as outlined below.

As a first step, defendant will cause Fine Elite to (1) transfer to him the shares held in the name of Wisenet for his benefit, and (2) issue the 2,550,000 shares he owns but that Fine Elite says have not been issued. Next, defendant will cause Rockwell and Fine Elite to transfer title to the shares he owns to the law firm of Bingham Greenebaum Doll LLP ("Bingham"), his defense counsel's firm.[4] Each company's Articles of Association appear to permit the transfer of shares from one shareholder to another. In addition, defendant has furnished a legal opinion from BVI counsel confirming that such a transfer is allowable under BVI law (**Exhibit J**).

The re-titling of the shares would require Rockwell and Fine Elite to issue new share certificates to Bingham and would require the companies to make corresponding changes to their

[4] Transferring title of the Fine Elite shares held in the name of Wisent first to defendant and then to Bingham, despite involving an extra step, will make the record clearer and cleaner.

books and records. The Court may require defendant to obtain from the companies copies of the books and records entries reflecting the transfer of defendant's shares to Bingham and then provide them, along with copies of the new share certificates, to the Court for verification.

Bingham would maintain the shares under a custodial arrangement. As officers of the Court, the firm would hold the shares in escrow pending the outcome of the case. Under the terms of an escrow agreement among defendant, the Special Master, and Bingham, a copy of which is attached as **Exhibit K**, in the event defendant is convicted, the shares may be liquidated and the sales proceeds used to satisfy his restitution and forfeiture obligations to the government. Any excess fund would be returned to defendant. Similarly, if the Court finds that defendant willfully failed to appear as required, the shares would be forfeited to the government. Finally, in the event defendant is acquitted or the charges against him are dismissed, Bingham will have the shares transferred back into defendant's name.

Defendant would be completely severed from access to or the use of the shares. He would no longer own any shares in either Rockwell or Fine Elite pending trial. He would have no right or authority to the shares or any funds from either company because he would no longer be a shareholder. Upon receipt of the original share certificates by Bingham, or the Special Master as the Court directs, defendant would be released from custody.

## III. WHETHER THE SPECIAL MASTER OR DEFENDANT'S ACCOUNTANT SHOULD REVIEW AND APPROVE DEFENDANT'S REQUESTS TO USE HIS ASSETS FOR EXPENSES

Given the Special Master's familiarity with the issues and its role as an officer of the court, the Special Master, as opposed to defendant's accountant, should be charged with reviewing and approving defendant's requests to use his assets for expenses. To that end,

defendant should be ordered to provide the Special Master, as directed by the Special Master, records reflecting his income and expenses, both personal and business.

**A. <u>Sale of Real Estate</u>**

Medicare has suspended payment of any claims defendant submits for medical services. Accordingly, any income he generates from his medical practice will be limited, and it is likely that defendant will have to liquidate some existing assets to pay legal fees and costs as well as personal and business expenses.

Defendant intends to sell one or more pieces of Florida real estate to pay legal fees and costs and cover personal and business expenses. Because of an injunction in the pending divorce proceedings that bars the sale of real estate without the court's permission, he will need both his wife's approval and that of the court to sell any real estate. The Special Master recommends that if a sale can be arranged, defendant's portion of the sales proceeds be directed to the Special Master to be deposited into a trust account maintained by the Special Master. Prior to closing, defendant should provide the Special Master with notice of any potential sale along with whatever documents the Special Master wants to review, including written instructions that his portion of the proceeds be made payable not to him but to the Special Master.

**B. <u>Legal Fees and Expenses</u>**

After funds have been deposited into the trust account maintained by the Special Master, defense counsel should be permitted to submit requests to the Special Master for funds to be deposited into counsel's trust account for legal fees and expenses. Funds transferred to counsel's trust account would be subject to an agreement by counsel that no funds be given to defendant. Because government counsel is not entitled to know what amounts of money defendant spends

on legal fees or expenses, or to whom expenses for his defense are paid, defense counsel should be entitled to submit requests to the Special Master *ex parte*.

### C. Personal and Business Expenses

Defendant may also need funds to cover personal and business expenses. To prevent defendant from receiving large sums of money with which he could flee the jurisdiction of the United States, he should provide the Special Master with invoices and statements reflecting expenses. The Special Master will pay invoices and statements in excess of a certain dollar amount directly to the vendor. Defendant will pay invoices and statements below that dollar amount using funds from a monthly sum of money the Special Master would distribute to defendant sufficient to cover, but not larger than, his demonstrated needs.

## IV. OTHER SUGGESTIONS FOR ASSURING DEFENDANT'S APPEARANCE

The Special Master recommends that the Court also place defendant under electronic monitoring and confine his travel to the Orlando and Jacksonville metropolitan areas. The Court may also wish to consider finding a suitable individual to act as a third-party custodian.

Respectfully submitted,

JOHN L. BROWNLEE
HOLLAND & KNIGHT LLP
SPECIAL MASTER

DATED: August 8, 2014

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of August, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Adam Blank
Adam M. Blank
Holland & Knight LLP
800 17th Street, N.W., Suite 1100
Washington, DC 20006
Tel: (202) 955-3000
Fax: (202) 955-5564
adam.blank@hklaw.com